IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JOSE HERNANDEZ AND PRISCILLA HERNANDEZ, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 7:13-CV-91(HL) |
| V. | ) ) | |
| CROWN EQUIPMENT CORPORATION, | ) ) ) | |
| Defendant. | ) | |

PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S
MOTION TO EXCLUDE EXPERT RUSS RASNIC, P.E.

I.    FACTS RELEVANT SPECIFICALLY TO THE TESTIMONY

OF RUSS RASNIC, P.E.


Crown's stand up forklift products are operated in environments in which

it is virtually certain that they will collide with another object.  This picture on

the next pages shows what the subject forklift looks like when an operator is

using it:



Crown's own experts and employees agree that all forklifts will be involved in collisions. *See e.g.* Brewer Dep. 10/11-23; Dunlap 88/16-89/1. [Doc. 38-2] The scratches and scuffs on the subject forklift show that it has been in many collisions. On the subject lift, the Plaintiff was protected from the consequences of these collisions on only three sides.

The fourth side of the operator compartment on the subject lift is an open doorway. This open end is usually at the leading end of the forklift as it is driven around with a load on its forks. Grisez Dep. 59/20-60/5. [Doc. 38-1] As can be seen in the pictures, the subject forklift's design requires the operator to stand in the machine sideways and when the forklift has a collision, the operators' left foot is less than a couple of inches from the open edge of the doorway. The subject lift provides no effective barrier to keep an operator's left foot and leg inside the machine.

### A.   Machine operating characteristics relevant to Mr. Rasnic's opinions

Furthermore, as illustrated in the above photographs and explained by Mr. Rasnic, the brake is operated by lifting the left foot off the brake pedal. Rasnic Report, p. 13. Thus, when the machine decelerates in response to braking, the operator will have his left foot, the one next to the open doorway, either completely or partially unweighted.   *See* Grisez Dep. p. 166-167. Any kind of

effort to maintain balance can result in the foot leaving the operator's compartment. Rule 26 Report of Kelly Kennett attached as Exhibit 3.

Foreseeably, during collisions, the left legs of operators wind up outside the operating compartment. Crown's primary defense is to blame the worker. *See e.g.* Grisez Dep. p. 19/21-23. Other experts have explained that doors will protect the operator from leaving the operator compartment, voluntarily or involuntarily. However, the Defense claims that it cannot put a door on the lift because doing so would increase the overall danger to the user.

Mr. Rasnic offers alternative design ideas that do not include doors and thus do not offend Crown's position. Instead, he addresses other ways to protect the operator from having his or her body parts escape the confines of an operator agreement. This testimony offers an important alternative to the jury should it decide that Crown's reasons for not having doors make sense.

### B.     The subject event

In his Rule 26 report, Mr. Rasnic describes the subject event. Rasnic Report, p. 4 and 14. Plaintiff Jose Hernandez was using a Crown Standup forklift at the Lowes Distribution Center in Valdosta. He was operating the forklift in the typical manner - with the open doorway in front and the forks in the back. As required, he was standing sideways in the unit so that his left foot was within an inch or so of the opening that is the forklift's entryway. As he was attempting to

make a right turn, Mr. Hernandez attempted to slow the machine using a technique called plugging but it lost power. When the machine failed to respond to his slowing and steering efforts, and the turn could not be safely completed, Mr. Hernandez applied the foot brake by raising his left foot. The forklift slowed in response; and in his effort to maintain his balance his left foot left the operator's compartment and ended up between the forklift and a shelving rack curbing[1]. Ultimately, his injuries required the amputation of his leg below his left knee.

Had Mr. Hernandez' foot not escaped the operator's compartment, he would have retained a position of safety and he would not have been injured. Accordingly, Mr. Rasnic's alternative designs are relevant and will be helpful to the jury.

Russ Rasnic, P.E. is a mechanical engineer with considerable experience in the lifting machine industry. *See* Rasnic Aff. ¶¶ 2-16. He considered the design of the Defendant's stand up forklift consistent with mechanical engineering

---

[1] Crown says that there was nothing wrong with the machine and that the event occurred because of operator error and misuse. Whether this is true of not is for the jury. However, because it is foreseeable that operators will misuse this product by colliding with objects, Crown has a duty to anticipate such events and design the product to provide reasonable protections to the user. *Chrysler Corp. v. Batten*, 264 Ga. 723, 450 S.E.2d 208, 211 (Ga. 1994)("[A] manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended *or foreseeable* uses.")

principles and determined that, as sold, the Crown forklift at issue is defective because it presents unreasonable risks of left leg injuries. *See* Rasnic Report. While Mr. Berry and Mr. Elrod discuss using a door to remedy the risk of left leg injuries, Mr. Rasnic was asked to consider other possibilities. Each of the design alternatives he offers are available in the marketplace and each would have prevented, or at least reduced the likelihood of, Plaintiffs' injuries.

Mr. Rasnic suggests changing the foot pedals so that when the brake is applied, the foot applying it is not next to the door. Rasnic Report, p.15. He opines that this will reduce the likelihood of the unweighted foot leaving the safety zone. *See Id.* He suggests using a backrest that better retains the occupant, and better aids with balance during deceleration events. *See Id.* at 16. He suggests changing the controls so that instead of the operator gripping two moving controls and having no steady handhold for balance, that a single control be used in conjunction with a grip for balance. *Id.* And he suggests that the sensor pedal presently under the right foot be made more sensitive to ensure that the machine does not inadvertently lose power and steering. *Id.* As is demonstrated in his Rule 26 Report (Exhibit 1) and his affidavit in which he addresses the issues in the Defendant's motion (Exhibit 2), his testimony is reliable, fits this case, and will be helpful to the jury's understanding of the issues.

-6-

Mr. Rasnic's extensive and detailed Rule 26 Report and affidavit describe every element necessary for the admission of all of his opinions. The Report describes his expertise as a mechanical engineer with particular experience with forklift products and products that use similar controls. He discusses his methodology in detail and how he followed that methodology to reach his opinions. After describing how the design of the Defendant's forklift product is unreasonably dangerous, and not in compliance with accepted safety design protocols, he suggests alternative designs and explains how they would eliminate the danger without negatively affecting the utility of the forklift products at issue. The design modifications he suggests are presently used and thus widely tested. That the Defendant thinks he is wrong does not equate to his testimony being inadmissible.

Mr. Rasnic's testimony will assist the jury in understanding:

• The dangers associated with the use of the Defendant's forklift as designed and sold;

• Application of design priorities as a protocol for identifying and reacting to the dangers presented by stand up forklifts; and

- How a modifications to the controls and occupant restraint would have protected Plaintiffs from injury without negatively affect the utility of the forklift.

## II.   DEFENDANT OFFERS NO GROUNDS TO EXCLUDE MR. RASNIC.

The potential for an interesting cross-examination does not provide a legal basis for excluding Mr. Rasnic's opinions. Crown's Brief in support of its motion to exclude Mr. Elrod is replete with the facts and argument Defendant will try to use to convince the jury that Mr. Rasnic's opinions should be ignored. But, simply pointing out that there is material to be used in cross-examining an expert does nothing to help this Court in its gatekeeping function. As literally dozens of courts have pointed out, *Daubert* motions are not substitutes for cross-examination.  "The gatekeeper role ... is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir.1999) As the Supreme Court pointed out in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798.  Furthermore,

> a proponent of expert testimony does "not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.... The

evidentiary requirement of reliability is lower than the merits standard of correctness."

All of the testimony Plaintiffs propose to elicit from Mr. Rasnic satisfies the admissibility criteria under Rule 702 because: (1) he is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which he reached his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) his testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *E.g., City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) *Florists' Mut. Ins. Co. v. Lewis Taylor Farms, Inc.*, 2008 WL 875493 (M.D. Ga.  2008) (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3rd Cir. 1994)).

## III.   MR. RASNIC'S OPINIONS ARE ADMISSIBLE

### A.   Mr. Rasnic has the requisite knowledge, skill, experience, training and education.

Mr. Rasnic has analyzed the product in this case from the point of view of a mechanical engineer who is familiar with operating controls and forklift use. Rasnic Report. He describes his experience in working on and analyzing products like the subject forklift in a manner that demonstrates his expertise is beyond that of the average juror. CV attached to his Rule 26 Report. The CV lists

all of his credentials but does not provide extensive detailed explanations. To make sure there is no doubt about his expertise, he prepared the attached Affidavit that expands his CV. Rasnic Aff. ¶¶2- 16.

Mr. Rasnic does not need perfect credentials and exactly applicable experience to testify as an expert. If that was the case, the only people who could criticize a design would be the people who designed it. That would be akin to allowing only foxes to count chickens. This Court has rejected such a stringent requirement, holding that:

> requiring stellar qualifications of all witnesses could unnecessarily deprive the jury of helpful testimony based upon minor shortcomings in a witness's qualifications.  As a result, courts liberally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualifications a matter for the jury to consider in determining what weight to give to the testimony.

*Cobb v. Dawson*, No. 5:06-cv-066 HL, 2007 WL 4373255, at *2 (M.D.Ga. December 12, 2007). The Eleventh Circuit's opinions are consistent with allowing experts who bring general, not just specific, expertise to the courtroom:

> [E]xperts may be qualified in various ways.  While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, experience, training, or education."

*United States v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. Ga. 2004); *see also* *Hammond v. International Harvester Co.*, 691 F.2d 646, 653 (3d Cir.1982)("under Rule 702, an individual need possess no special academic credentials to serve as an expert witness."); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100-01 (8th Cir.2006)("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility.")

Rasnic has more than general expertise. He has developed particular expertise relating to standup forklifts by focused work in this case that lead to his opinions relating to alternative designs that eliminate or reduce the hazard that caused Plaintiffs' injuries. He not only considered the risk, he identified currently used designs that reduce or eliminate it.

Mr. Rasnic analyzed the product as a mechanical engineer trained in the application of what he calls the established design priorities. He has great experience and appropriate training in that area. When this design protocol is applied it demands that once a danger is identified, that it be eliminated, or at least reduced, by first considering designing it out, then guarding and then applying warnings, then training and lastly personal protective equipment. Here the danger is left leg injuries and the modifications that Mr. Rasnic suggests (leaving the door issue to others – including Mr. Berry and Mr. Elrod) relate to preventing the loss of balance that caused Mr. Hernandez' foot to be crushed. Mr.

Rasnic has personal experience with every design alternative he suggests as all are being used in the market place.

Mr. Rasnic's experience offers the jury something that is clearly beyond the experience and understanding of the average citizen and he will be able to enlighten the jury about the issues in this case.

      2.    **Mr. Rasnic's Opinions Are Reliable.**

Mr. Rasnic followed an appropriate design/engineering methodology that is consistent with the approach taken by experts considering the issues relevant to this case.  As noted above, his methodology, described in his Rule 26 Report, applied the five-priority protocol published in the "Accident Prevention Manual by the National Safety Council and other peer-reviewed publications."  Report at 11.  As Mr. Rasnic explained, this methodology first involves identifying hazards that present in the forklift through its intended use and foreseeable misuse and then using the protocols to consider means to reduce or eliminate the hazards. Report at 12-13. Mr. Rasnic's approach to assessing the hazard at issue lead him to the conclusion that during a deceleration event such as the collision Plaintiff was involved in, the door opening creates a hazard because it allows the operator's left foot to be crushed. Mr. Rasnic explains how the danger created by this opening is exacerbated by the positioning of the foot pedals, the design of the backrest, and the lack of even a single stationary handhold. He explains in

great detail how all of these design decisions by Crown relate to what happens in the event of a collision event.

   • **Mr. Rasnic's opinions about the brake are reliable**

Mr. Rasnic discusses the location of the brake as well as industry standards that relate to it. He opines that because the brake is near the door, when the operator unweights his foot to apply it, he is exposed to the danger of losing his balance toward the raised foot and having that foot go outside the compartment when the operator attempts to remain standing. He explains why this happens during the kind of deceleration event in which Mr. Hernandez was involved. In this regard he opines that,

> it was foreseeable that, in circumstances where the deadman brake was applied at travel speeds, the deceleration in this direction would have a tendency to move the operator toward this opening. This is exacerbated by the fact that the left or outermost leg of the operator would necessarily be raised to actuate the brake, causing an imbalance condition and allowing the person's center of gravity to shift outside of the stability zone. Human factors principles known to me through my studies and experience as an engineer, as well as common sense, make it obvious that a force in the direction of the raised leg would have a tendency to rotate the operator's body in that direction,

Rasnic Report at 15. He suggests moving the brake pedal to the right foot so that when the foot operating the brake is raised it will not be near the door opening. In doing so, he notes that there is no standard as to where the brake should be located - except for a military standard and he explains why that standard "does

not trump the need for safety." Report at 13-14. In Figure 10 in his Report he shows a photograph of a brake on a standup forklift that is in the location he suggest and that is operated by the right foot instead of the left. Because this design alternative is being used on an actual product, there is no need to build a prototype to test.

- **Mr. Rasnic's Opinions About Sensor Pad are Reliable.**

Mr. Hernandez says that the reason he collided with the end cap of the shelving aisle is that as he began turning he lost power, power steering, and the standard method of slowing called "plugging." Thus he was forced to raise his left foot off the brake. An explanation for a power loss is that the sensor pedal under his right foot did not stay engaged as he decelerated while moving towards his left. An explanation for that would be a reduction of weight on the right foot as result of deceleration forces and falling towards his left foot which was necessarily raised to operate the foot brake. Mr. Rasnic points out that the simple fix is simply to make the pedal bigger and more sensitive. He notes that at least 25 of Crown's known collected event reports are related to loss of steering. This is reliable, because if the machine does not lose power it does not lose plugging and steering and there is no collision in this case. Defendant's statement that there was nothing wrong with the machine, and that a loss of power does not affect steering is just that – a statement. It is not an

uncontradicted fact. In contrast to Defendant's position is the fact that Mr. Hernandez says he lost power and steering immediately during his effort to turn as well as Mr. Rasnic's opinion as to the cause of this loss of power and steering. Mr. Rasnic used an appropriate methodology to reach his opinions – he inspected the machine and reviewed its schematics and manuals.

- **Mr. Rasnic's opinions about the backrest are reliable.**

Crown uses a backrest that provides "minimal resistance" to prevent the operator in a decelerating machine from going towards the open door. Rasnic Report at 16. Rasnic proposes a simple solution - modify the backrest so that it better holds the operator in place. This is a reliable opinion because this design is already in use on competitive machines. He has personally operated a machine with the backrest he opines is necessary. Thus, he has followed an appropriate methodology – personal testing and the five-priority protocol – to reach this opinion.

- **Mr. Rasnic's opinions about the handhold is reliable.**

There are no fixed handholds on Crown's forklift product. When an operator attempts to remain balanced, his hands are both on movable controls and of limited use to him. "On the subject Crown machine, neither hand holds onto a stationary handhold, as both the right and left hands are on moving control devices. Tests of the Prime Mover machine revealed much better

-15-

resistance to body movement during forks trailing deceleration, since there is a fixed object to counteract the balance reduction caused by raising the left foot off of the deadman (brake) pedal. This style of control is ANSI standard compliant as well." Report at 16-17. Just as with the brake pedal modification suggested by Mr. Rasnic, an alternative design exists, is shown on his Report, and is in use in industry. Furthermore, just as with the backrest Mr. Rasnic's methodology had included his personal use of a machine that has his suggested modifications.

• **Four Enumerated Opinions**

In addition to the sub opinions discussed above, Mr. Rasnic has four individual paragraphs containing his opinions. These are not individually addressed by the Defendant, but each is reliable as being the product of an appropriate methodology.

Opinion 1 is that manufacturers, including Crown, should follow the design priorities that Mr. Rasnic discusses in his Report. After applying these priorities to the subject forklift Mr. Rasnic is of the belief that Crown did not follow the priorities relating to the loss of balance hazard. Mr. Rasnic's Report and Affidavit describe in detail how he applied the priorities to the forklift. These priorities are virtually universally accepted. Mr. Rasnic's application of them is repeatable and testable.

Opinion 2 is that a loss of steering started the accident sequence and that

this was either the result of failure of the machine to operate as designed (an intermittent failure/defect) or something that caused him to raise his right foot from the sensor pad (a product of a design that causes movement towards the operator's left during deceleration). Regardless, this describes a defect that is consistent with the evidence.

Opinion 3 and 4 relate to the loss of balance that is foreseeable during a deceleration event – particularly one in which the brake under the left foot is activated. This loss of balance creates a risk that the operator's left foot will exit the machine and be injured. Mr. Rasnic explains in more than adequate detail how this occurs and how the danger can be, and has been by other manufacturers, eliminated by moving the brake pedal.

Defendant's criticism of Mr. Rasnic's opinions which are the product of his application of the design safety hierarchy, or protocols as he calls them, is an issue for cross-examination. Courts routinely permit experts to testify based upon their use of this well-established engineering method. *See e.g. In re Stand 'n Seal, Prods. Liab. Litig.*, 636 F. Supp. 2d 1333, 1338 (N.D. Ga. 2009)(expert testifying concerning her application of safety hierarchy to consumer products); *Martinez v. Terex Corp.*, 241 F.R.D. 631, 637 (D. Ariz. 2007); *Covas v. Coleman Co.*, 2005 U.S. Dist. LEXIS 46712, *35 (S.D. Fla. June 27, 2005)(approving expert who

based opinion on "[p]ersonal knowledge of the 'design hierarchy' or 'safety hierarchy,' as generally employed in the field of human factors).

The Defendant's complaints that that Mr. Rasnic did not adequately test his designs are meritless. Here, he is not proposing a novel solution or a novel product design. As one court has stated,

> [E]xpert testimony can be admissible without testing, if the expert's proposed alternative design is in service in the market. Keller v. CNH America, LLC, No. 07-1648, 2009 U.S. Dist. LEXIS 52577, 2009 WL 1766695, at *5 (D. Minn. June 22, 2009) (finding that despite the failure to test the alternative design, the expert's testimony was admissible because other machines of the same type at question in the litigation had been manufactured using a mechanism similar to the one which the expert proposed); see also Winters v. Fru-Con Inc., 498 F.3d 734, 742 (7th Cir. 2007) (declining to require alternative design testing as an "absolute prerequisite to the admission of expert testimony" because the Daubert inquiry is meant to be a "flexible inquiry").

Rousu v. Rubbermaid Commer. Prods., LLC, 2011 U.S. Dist. LEXIS 26344 (D. Minn. 2011); MacCleery v. Royce Union Bicycle, Inc., 1996 WL 442707, at *4 (D.N.H. June 11, 1996)("[A] design which is in current commercial use is presumptively effective and, as such, cannot be dismissed as an untested and novel theory simply because the expert did not also  identify a testing procedure which validates the effectiveness.").

IV.   **CONCLUSION**

Because the jury will need expert opinions to understand the complexities

of this case, Mr. Rasnic should be allowed to testify.

This 21st day of August, 2014.

Respectfully submitted,
WARSHAUER LAW GROUP, P.C.

*By:  s/ Michael J. Warshauer*
Michael J. Warshauer
Georgia Bar No. 018720
Trent Shuping
Georgia Bar No. 159083
Attorneys for Plaintiffs

2740 Bert Adams Road
Atlanta, GA 30339
404-892-4900
404-892-1020 Fax

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing upon all parties to this matter via the CM/ECF system, which will electronically notify all counsel of record.

This 21st day of August, 2014.

*By:  s/ Michael J. Warshauer*
Michael J. Warshauer

Warshauer Law Group, P.C.
2740 Bert Adams Road
Atlanta, GA 30339
404-892-4900
404-892-1020 Fax

-20-