**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**JOSE HERNANDEZ and PRISCILLA HERNANDEZ**,

Plaintiffs,

v.

**CROWN EQUIPMENT CORPORATION**,

Defendant.

Civil Action No. 7:13-CV-91 (HL)

**ORDER**

A pretrial conference was held in this case on June 26, 2015. During the conference, several pending motions were heard. The Court enters the following order on those motions.

## I. PLAINTIFFS' MOTIONS IN LIMINE (Docs. 113, 114)

### 1. Evidence of contributory negligence

Plaintiffs move to exclude any evidence or testimony of contributory or comparative negligence by Mr. Hernandez. As noted in the parties' joint pretrial order, Plaintiffs have abandoned their negligence claims and are pursuing their claims solely under the doctrine of strict liability. In Georgia, it is well-established that the principles of contributory and comparative negligence are inapplicable in products liability cases grounded on strict liability. See Patterson v. Long, 321 Ga. App. 157, 161 (2013) ("Both parties agree that if liability is imposed upon a

defendant manufacturer under the doctrine of strict liability, principles of contributory and comparative negligence are inapplicable, and fault should not be apportioned between the plaintiff victim and the defendant manufacturer in awarding damages.")[1]; see also Deere & Co. v. Brooks, 251 Ga. 517, 518 (1983) (holding that contributory negligence is not a defense to a claim of strict liability and explaining, "contributory negligence consisting of a careless act by the injured person with respect to the product is no defense, where the actual cause of the injury arises from an unanticipated defect in the product itself, and not from the careless act of the plaintiff").

In response, Defendant states that it does not intend to pursue a contributory negligence defense at trial. However, Defendant does seek to introduce evidence of Mr. Hernandez's alleged comparative fault and to invoke the tenants of O.C.G.A. § 51-12-33(a), which requires reduction or apportionment of damages where "the plaintiff is to some degree responsible for the injury or damages claimed." Once the trier of fact determines the total amount of damages and the percentage of fault of the plaintiff, the judge then "shall reduce the

[1] In Patterson, the Georgia Court of Appeals noted that the parties to that action agreed that where liability is predicated on strict liability rather than negligence, neither contributory nor comparative negligence is a valid defense. 321 Ga. App. at 161. Noting that the parties' here do not concur as to the status of the law, Defendant attempts to distinguish Patterson based on that agreement language. However, it is apparent from the context of the opinion that the mutual understanding of the parties in Patterson was founded in long-standing concepts of common law that this Court finds no valid reason to disturb.

amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault." O.C.G.A. § 51-12-33(a).

Defendant attempts to differentiate between comparative negligence and comparative fault, relying on the Georgia Supreme Court's determination that "fault" encompasses more than mere negligence. Couch v. Red Roof Inns, Inc., 291 Ga. 359, 362 (2012) ("there is direct evidence from the statute . . . that fault is not meant to be synonymous with negligence"). In Couch, the United States District Court for the Northern District of Georgia certified two questions to the Supreme Court, one being whether in a premises liability action alleging that a property owner negligently failed to prevent a foreseeable criminal act the jury may consider the fault of the intervening criminal assailant and apportion the award of damages between the property owner and the criminal assailant under O.C.G.A. § 51-12-33. Id. at 359. The purpose of the court's examination of the meaning of "fault" was not to exclude negligence from the definition but to explain that the word itself incorporates intentional conduct along with negligence. Id. at 361-62, 365 ("'fault,' as used without limitation in O.C.G.A. § 51-12-33, includes all wrongdoing").

In the context of this case, the question of fault relies on a determination of whether or not Mr. Hernandez was negligently operating the forklift at the time of his accident. Thus far, there is no evidence of any intentional wrongdoing by Mr. Hernandez. The state of the law is clear in Georgia: where a defendant

manufacturer is found liable under the doctrine of strict liability, the principle of comparative negligence does not apply, and it is not appropriate to apportion fault between the plaintiff victim and the defendant manufacturer. Patterson, 321 Ga. App. at 161; see also Ford Motor Co. v. Carter, 239 Ga. 657, 660 (1977) ("Essentially the doctrine of strict liability eliminates questions of negligence in tort actions.") (internal punctuation and quotation omitted). Defendant has presented the Court with no contrary authority. Accordingly, Plaintiffs' motion is **SUSTAINED**.

**2. Lowe's investigative report**

Plaintiffs next seek to exclude the written report prepared by the Lowe's employees who investigated the accident. Plaintiffs do not object to these particular employees offering factual testimony pertaining to what they observed at the time of the accident and in the course of the investigation. However, Plaintiffs do object to any of these witnesses drawing any legal conclusions or offering any ultimate opinions about the cause of the accident. According to Plaintiffs, these witnesses have not been qualified as experts and should not be permitted to offer what amounts to expert testimony. Plaintiffs' motion is **SUSTAINED IN PART** and **OVERRULED IN PART**. Defendant is entitled to proffer factual testimony from the Lowes witnesses; however, Defendant may not go so far as to ask these witnesses about any conclusions or opinions drawn in the course of the investigation.

**3. Evidence of Jose Hernandez's immigration status**

The parties consent to this motion. It is **SUSTAINED**.

**4. Evidence of receipt of workers compensation benefits**

The parties consent to this motion. It is **SUSTAINED**.

**5. Evidence of the effect of a verdict**

The parties consent to this motion. It is **SUSTAINED**.

**6. Evidence that this was a legal accident**

The parties consent to this motion. It is **SUSTAINED**.

**7. Taxation of an award of compensatory damages**

The parties consent to this motion. It is **SUSTAINED**.

**8. Timing of hiring counsel or filing suit or number of lawyers involved**

The parties consent to this motion. It is **SUSTAINED**.

**9. Evidence related to annuities**

The parties consent to this motion. It is **SUSTAINED**.

**10. Evidence or argument blaming any other person or entity should be excluded**

The parties consent to this motion. It is **SUSTAINED**.

**11. Assumption of the risk**

Plaintiffs move to exclude evidence that Mr. Hernandez assumed the risk of injury. Assumption of risk is a valid defense in a strict liability case. Deere & Co., 250 Ga. at 519. "'Assumption of the risk means the plaintiff is fully aware of

the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless.'" Yamaha Motor Corp., U.S.A. v. McTaggart, 313 Ga. App. 103, 105 (2011) (quoting Cotton v. Bowen, 241 Ga. App. 543, 544 (1999)). In order to effectively assert this defense, a defendant must demonstrate that the plaintiff "'(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.'" Id. (quoting Garner v. Rite Aid of Ga., 265 Ga. App. 737, 739-40 (2004)). Knowledge of the risk incorporates both actual and subjective knowledge. Id. The plaintiff must subjectively possess knowledge "of the specific, particular risk of harm associated with the activity or condition that proximately caused the injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities." Id. at 105-106; see also Bodymasters Sports Indus., Inc. v. Wimberley, 232 Ga. App. 170, 173-74 (1998). In the absence of plain, palpable, and indisputable evidence, the question of whether a plaintiff assumed the risk ordinarily is a question for the jury. Id. at 106.

The Court **RESERVES** ruling on this motion to see what evidence is produced in the course of the trial.

**12. Comparison of this case to "litigation lottery"**

The parties consent to this motion. It is **SUSTAINED**.

**13. Plaintiffs' possible use of a judgment**

The parties consent to this motion. It is **SUSTAINED**.

**14. Equally available witnesses**

The parties consent to this motion. It is **SUSTAINED**.

**15. Military Standards for Standup Forklifts**

Plaintiffs argue that Defendant should be prohibited from presenting evidence that Defendant does not include a door on the model forklift in question based on the U.S. Military Standards, which require that there be no impediment to rapid egress. Plaintiffs assert that the military standards are irrelevant, and interjecting these additional standards is misleading and will cause confusion. The military has different needs and concerns that dictate the type of machinery required. According to Plaintiffs, this machine is built according to ANSI/ITSDF standards, and the evidence should be limited to that particular protocol.

Defendant points out that the military standards are but one factor considered by the manufacturer. The standards are relevant because the military employs the subject forklifts not in combat but in warehouses. Defendant concedes that while the military standards may have limited relevance, the jury still should be permitted to evaluate all of the different standards considered by Defendant when deciding whether the product should or should not include a door. The Court agrees. Plaintiffs' motion is **OVERRULED**.

**16. Evidence that Crown does not include a door because of the dangers associated with the forklift going off a loading dock**

Plaintiffs anticipate that in defense of the decision not to include a door on the forklift under scrutiny in this case Defendant will attempt to introduce evidence of the dangers associated with off-dock accidents. Plaintiffs object to the presentation of this evidence because the forklift operated by Mr. Hernandez at the time of his injury was utilized strictly in the warehouse and could not access the loading docks, so there was no risk of an off-dock incident. Accordingly, the defense is irrelevant and should be excluded.

Plaintiffs' motion is predicated on the assumption that the forklift in question cannot and does not venture onto the Lowes loading docks. The Court **RESERVES** ruling on this motion pending the presentation of relevant evidence.

**17. BRC/SEA videos**

Plaintiffs move to exclude the introduction of "dramatic and inflammatory video showing forklifts, with dummies onboard, going off loading docks and tipping over." (Doc. 114, p. 3). Plaintiffs do not deny that an off-dock or tip over accident can result in a catastrophic head injury. However, Plaintiffs contend that the jury can be told that such an injury can occur without seeing it. According to Plaintiffs, the visual impact of the video clips, particularly if Defendant attempts to play the videos for the jury numerous times, is sensational and highly prejudicial.

Defendant explains that the videos are valuable as demonstratives for jurors, who likely have no experience operating standup rider forklifts, and are important illustrations of the types and severity of the injuries considered in the design of the product. Defendant intends to show the clip during opening statements and again during the testimony of one of its engineers.

The relevance of the videos is tied to the issue of whether the forklift here was even used on the loading docks. In the event that evidence comes to light, the Court likely will permit Defendant to show the video. For now, the Court **RESERVES** ruling on Plaintiffs' motion.

**17.[2] Evidence and Argument that Crown is aware of fatalities or serious injuries caused by or contributed to by doors on standup forklifts**

Plaintiffs contend that in prior trials Defendant's employees and experts testified that two individuals have died as a result of doors on forklifts. Plaintiffs assert that this evidence is a complete fabrication. Defendant states that it has no intention of presenting fabricated evidence. To that end, the motion is uncontested, and the Court **SUSTAINS** the motion.

**18. Evidence that off dock events and tip overs are as common as collision events on standup forklifts**

Plaintiffs move to exclude evidence that the likelihood of a tip over or off-dock event is greater than a collision event. Plaintiffs aver that no such evidence

[2] Plaintiffs misnumbered this motion.

exists. Defendant counters that it intends to present the statistical data available for all types of events, which can be compared by the jury. Plaintiffs' motion is **DENIED**. Both sides are entitled to question the statistical data and to demonstrate any fallacy therein through appropriate cross examination.

**19. Statistical data that blends the likelihood of injury on a standup forklift with data that includes other forklift models**

Plaintiffs posit that OSHA statistics on forklift injuries combine all models of forklifts and are not limited to standup forklifts. Introduction of this evidence thus will be misleading. Plaintiffs' motion to exclude this evidence is **DENIED**. The parties can address any issues with the statistical reports through thorough questioning of the proper witnesses.

**20. Evidence about how the presence of a door would have caused injury or death had a door been installed in previous particular tip over and off-dock events**

This motion particularly addresses the proposed testimony of Stanley Amey, an individual involved in a tip over event who allegedly was able to exit the forklift and avoid injury and who has offered testimony on Defendant's behalf in other proceedings. What happened to Mr. Amey is nothing more than anecdotal evidence with no connection with this case and in no way exonerates Defendant. Unless Defendant can produce applicable case law supporting the propriety of Mr. Amey's testimony, the Court will **GRANT** Plaintiffs' motion.

**21. Evidence that a door increases the likelihood of injury or death**

Upon further discussion, the parties consent to this motion. It is **SUSTAINED**.

**22. OSHA's recommendations relating to doors**

Upon further discussion, the parties consent to this motion. It is **SUSTAINED**.

**23. Evidence that Jose Hernandez was reprimanded or counseled by Lowes**

Unless Plaintiffs otherwise open the door to question Mr. Hernandez's performance record, the parties consent to this motion. It is **SUSTAINED**.

**24. Evidence that Jose Hernandez was involved in a car accident in June 2013**

The parties consent to this motion. It is **SUSTAINED**.

**25. Evidence that Jose Hernandez operated a sitdown forklift without a license while previously employed**

The parties consent to this motion. It is **SUSTAINED**.

**26. Witnesses should be directed to answer the questions asked and not make speeches**

Hopefully, there will not be an issue with long-winded witnesses. In the event that such an issue arises, the Court will address the problem. The Court therefore **RESERVES** ruling on this motion.

**27. Evidence that Crown does not have doors because no other manufacturer has doors**

Plaintiffs ask the Court to prohibit any evidence or argument that Defendant elected not to include doors on its standup forklift because other manufacturers of similar products do not design their products with doors. Whether or not Defendant's conduct in eliminating the door from the forklift was reasonable in light of how other companies design their machines is not an issue before the Court. Rather, the issue is whether the design itself is unreasonably dangerous.

The Court agrees that what other manufacturers do or do not do in terms of design makes little difference and is not relevant to this case. However, Defendant is entitled to explain the basis for its choice not to include the door in its design. Plaintiffs' motion thus is **SUSTAINED IN PART** and **OVERRULED IN PART**.

**28. Evidence that Crown is the biggest employer in its hometown or that it is a family business**

Plaintiffs' motion is **OVERRULED**. Defendant is permitted to introduce itself to the jury.

**29. Evidence about what Crown's consultants have told it over the years**

In reviewing prior trial transcripts, Plaintiffs ascertained that in the past Defendant has called upon a particular witness, namely Dan Dunlap, to garner

testimony about the design process. In the course of that testimony, Defendant then solicits testimony about how other experts and consultants have counseled Defendant about its forklift design and the impact of a door on safety. Plaintiffs argue that this testimony is hearsay offered for the “truth of the matter asserted.” Fed.R.Evid. 801. Defendant counters by saying that the testimony is offered not for the truth of the information conveyed but merely to demonstrate that Defendant has been well advised over the years and that Defendant acted reasonably in implementing the design in question.

The Court **RESERVES** ruling on this motion at this time and requests that Defendant produce caselaw in support of its position.

**30. Evidence that the design of the forklift has been given awards**

The fact that Defendant’s product has received various awards has no probative value in this case. Plaintiffs’ motion is **SUSTAINED**.

**31. Evidence that safety is Crown’s primary concern**

Upon further discussion, the parties consent to this motion. It is **SUSTAINED**.

## II. DEFENDANT’S MOTIONS IN LIMINE (Docs. 115, 116, 129)

**1. Evidence of, testimony from, or reference to other litigation or prior settlements**

Upon further discussion, the parties consent to this motion. It is **SUSTAINED**.

**2. Reference to the financial worth of Crown or equating Crown's conduct with the conduct of other corporations**

Upon further discussion, the parties consent to this motion. It is **SUSTAINED**.

**3. Other irrelevant matters**

Upon further discussion, the parties consent to this motion. It is **SUSTAINED**.

**4. Plaintiffs' deposition designations**

In the course of preparing for the trial of this case, Plaintiffs designated deposition testimony for a variety of witnesses previously unidentified to Defendant. The Court **RESERVES** ruling on the admissibility of this evidence.

**SO ORDERED** this 2nd day of July, 2015.

***s/ Hugh Lawson***
**HUGH LAWSON, SENIOR JUDGE**

aks